IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| GORGE LEASING CO., a Washington corporation, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No. 07-826-KI |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| THRIFTY PAYLESS, INC., a California corporation, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| ———————————————— | ) | |

Edwin C. Perry
Tonkon Torp LLP
1600 Pioneer Tower
888 S. W. Fifth Avenue
Portland, Oregon  97204

    Attorney for Plaintiff

Kerry J. Shepherd
Markowitz, Herbold, Glade & Mehlhaf
1211 S. W. Fifth Avenue, Suite 3000
Portland, Oregon  97204-3730

Page 1 - OPINION AND ORDER

Delbert D. Miller
Rohde & Van Kampen PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington  98154-1000

      Attorneys for Defendant

KING, Judge:

This action arose over a dispute concerning a rent escalation clause in the lease of a commercial building.  The landlord believes that the rent continues to escalate on renewal of the lease after expiration of the initial term.  The tenant believes that the rent remains the same during the renewal term as it was at the time the initial term expired.  Before the court are cross motions for summary judgment.  For the following reasons, I conclude that the lease is not ambiguous and does not provide for any rent increase during the renewal terms.

## FACTS

Plaintiff Gorge Leasing Co. ("Landlord") and Pay Less Drug Stores Northwest ("Pay Less Drug") entered into a lease on June 29, 1981 ("Lease") for commercial space in Lincoln City, Oregon.  Pay Less Drug provided a form lease which the parties used to fill in the negotiated terms.  Defendant Thrifty Payless, Inc. ("Tenant"), as Pay Less Drug's successor, is currently in possession of the property.

The Lease provides for base rent of $51,990 annually for the first five years; $60,550 annually for the second five years; $69,220 for the third five years; and $77,850 annually for the fourth five years of the original 20 year term of the Lease.  These five-year annual rent increases are each in the fixed amount of $8,650.

Page 2 - OPINION AND ORDER

The Lease also provides for percentage rent of 1.5% of Tenant's gross sales that exceed $4 million. Beginning in the sixth year of the original term, Tenant could offset $8,650 from any percentage rent due. In the eleventh year, this offset increased to $17,300. And in the sixteenth year, this offset increased to $25,950.

The original term of the Lease was from 1981 until 2001, with the Tenant having the option to "extend the term of this Lease for four (4) consecutive periods of five (5) years each on the same terms and same conditions, except length of term as the original term." Marlow Decl. Ex. A (hereinafter "Lease") ¶ 4.

The two men who negotiated the lease over 25 years ago have understandably hazy memories of the negotiation. Neither recalls any discussion or negotiation concerning the renewal terms stated in paragraph 4 of the Lease. Landlord's representative is confident that he and Landlord would not have agreed to freeze the minimum annual rent for what could be the final 25 years of a potential 40-year lease. In contrast, Tenant's representative states that it was not the usual practice to agree to an escalation of rents during renewal option periods in Tenant's leases and, if that were intended, the amount of the increase for the renewal period would have been specifically spelled out.

Tenant exercised the first renewal option in August 2001. On September 28, 2001, Landlord acknowledged the renewal and stated that the Lease provided that "the extension shall be on the same terms and conditions, which included a rate increase every five (5) years." Miller Decl. Ex. 4. On October 11, 2001, Landlord notified Tenant that based on research of the market rent in the Lincoln City area, the base rent would increase during the five year extension to $7,433.33 per month ($89,199.96 per year).

Page 3 - OPINION AND ORDER

Tenant responded on November 9, 2001:

> I have again reviewed your letters of September 28 and October 11, 2001
> regarding your proposed rental increase for the option renewal period beginning
> November 1, 2001, and I have also reviewed Lease Section 4, Options for
> Renewal.  Section 4 of the Lease states that the Lease is extended on the "same
> terms and conditions". [sic]  Thus, rental during the renewal term shall be $77,850
> per annum.

Miller Decl. Ex. 6.

On December 11, 2001, Landlord responded in part:

> As you are aware, Section 5(a)(I) of the Lease provided for fixed rent increases
> every fifth year during the original twenty-year term of the Lease.  These fixed
> rent increases were of approximately 16.75 percent every fifth year.  Section 4 of
> the Lease, which provides that each renewal term will be on the same terms and
> conditions as the original term, incorporated these fixed rent increases.

> Notwithstanding the foregoing, given the current economic conditions in
> Lincoln City, GLC is willing to proceed with the first five-year renewal period
> upon the terms and conditions set forth in your November 9, 2001 letter.  Please
> be advised, however, that GLC is only willing to proceed on this basis for the first
> option period, and it not waiving its right to require that the additional three
> option terms incorporate the fixed rental increases as provided for in Sections 4
> and 5(a)(I) of the Lease.

Perry Decl. Ex. A.

In August 2006, Tenant exercised its second renewal option.  On September 14, 2006,

Landlord's attorney notified Tenant that it believed the Lease provided for a minimum rent

increase of 16.75% at the beginning of each option term.  Landlord intended to require the

increase for this exercise of the renewal option and collect $90,889.88 per year.  Tenant refused

to pay the increase and Landlord declared a default on November 8, 2006.

**LEGAL STANDARDS**

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The initial burden is on the moving party to point out the absence of any genuine issue of material fact.  Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  On a motion for summary judgment, the evidence is viewed in the light most favorable to the nonmoving party.  Universal Health Services, Inc. v. Thompson, 363 F.3d 1013, 1019 (9th Cir. 2004).

**DISCUSSION**

Landlord seeks a declaratory judgment that the $8,650 increase in annual rent that the Lease required every five years during the original 20-year term also applies to each five-year term.  Landlord also seeks recovery of the underpayment in rent it has received since the second renewal term began.

Landlord argues that the renewal language–on the same terms and conditions–is not ambiguous.  It contends that the Lease should continue to increase the base rental payment of $8,650 at the beginning of each optional five-year renewal period, just as the payment increased at the beginning of each five-year period during the initial term.  Landlord argues that keeping the base rental payment constant from 1996 until 2021 at $77,850 is plainly inconsistent with fundamental business considerations such as inflation.  Similarly, the offset against the percentage rent increased by $8,650 at the beginning of each five-year period.  Landlord also argues that the lease should be construed against the drafter, Tenant's predecessor.

Tenant agrees that the Lease is not ambiguous.  It notes the Lease contains no further increase for any period after the increase beginning with the 16th year.  Tenant argues that if the parties intended to have additional rental increases at the 21st, 26th, 31st, or any later year of the Lease, such a term could easily have been added.  Thus, Tenant argues Landlord is asking the court to modify the Lease by inserting a material term for rental increases at the start of each renewal term.  Tenant further argues that the Lease does not specify how much to raise the rent during the optional renewal period, such as by an amount that reflects the changing market or by the same percentage or by the same fixed dollar amount or by some other factor.  Tenant notes that in 2001, Landlord sought to raise the yearly rent by $11,349.96, based on the current market rate, but now seeks an increase of $8,650 per year.  Tenant uses this change in Landlord's position as evidence that the Lease does not allow an increase.

Under Oregon law, the interpretation of a contract is a question of law for the court. Hoffman Construction Co. v. Fred S. James & Co., 313 Or. 464, 469, 836 P.2d 703 (1992).  The court's goal is to give effect to the intention of the contracting parties.  Anderson v. Jensen Racing, Inc., 324 Or. 570, 575-76, 931 P.2d 733 (1997); ORS 42.240 (in the construction of a written instrument the intention of the parties is to be pursued if possible).

"To interpret a contractual provision, . . . the court follows three steps.  First, the court examines the text of the disputed provision, in the context of the document as a whole."  Yogman v. Parrott, 325 Or. 358, 361, 937 P.2d 1019 (1997).  "If the provision is clear, the analysis ends." Id.

> "When considering a written contractual provision, the court's first inquiry is what the words of the contract say . . . .  To determine that, the court looks at the four corners of a written contract, and considers the contract as a whole with

> emphasis on the provision or provisions in question. The meaning of disputed
> text in that context is then determined. In making that determination, the court
> inquires whether the provision at issue is ambiguous. Whether terms of a contract
> are ambiguous is a question of law. In the absence of an ambiguity, the court
> construes the words of a contract as a matter of law."

Id. (quoting Eagle Industries, Inc. v. Thompson, 321 Or. 398, 405, 900 P.2d 475 (1995)).

A contract or term is unambiguous if it has only one sensible and reasonable interpretation. D&D Co. v. Kaufman, 139 Or. App. 459, 462, 912 P.2d 411 (1996). For a contract or term to be legally ambiguous, it must be susceptible to at least two plausible interpretations when examined in the context of the contract as a whole. Moon v. Moon, 140 Or. App. 402, 407, 914 P.2d 1133 (1996).

If the contractual provision at issue is still ambiguous after examining the text and its context, the second step "is to examine extrinsic evidence of the contracting parties' intent." Yogman, 325 Or. at 363. In determining whether an ambiguity exists, the court may consider parol and other extrinsic evidence. Moon, 140 Or. App. at 407; see also Adams v. Knoth, 102 Or. App. 238, 243-44, 794 P.2d 796 (1990) ("[i]n deciding if the language of a contract is ambiguous, it is proper for the court to consider extrinsic evidence regarding the circumstances under which an agreement was made or to which it relates."). The parties' "practical construction of an agreement may hint at their intention." Yogman, 325 Or. at 364.

If the first two analytical steps have not resolved the ambiguity, the court proceeds to the third and final analytical step: the use of "appropriate maxims of construction." Id. This includes the rule that the terms of a contract are construed against the drafter of the language. Hoffman Construction Co., 313 Or. at 470.

Page 7 - OPINION AND ORDER

If the language is still ambiguous, the trier of fact decides what the parties intended by the language. <u>Oregon School Employees Ass'n v. Rainier School District No. 13</u>, 311 Or. 188, 194, 808 P.2d 83 (1991); <u>Yogman</u>, 325 Or. at 364.

The base rent for the final five years of the initial term of the Lease is stated as:

> commencing with the 16th year[,] Tenant shall pay the sum of $77,850 per year payable in equal monthly installments of $6,487.50.

Lease ¶ 5(a)(1). The percentage rent is defined in similar terms:

> beginning with the percentage rent due in the 16th year, Tenant shall have the right to deduct $25,950 per year from any percentage rent due.

Lease ¶ 5(b)(3).

I agree with the parties that the Lease is not ambiguous. The Tenant has the option to extend the Lease on the same terms and same conditions. The terms specifying the base rent and percentage rent are quoted immediately above. Those rents increased "commencing with the 16th year" and "beginning with the percentage rent due in the 16th year," respectively. Those rent amounts are not specified for a limited duration, such as from the 16th through the 20th year. I see no ambiguity here and conclude that once the rent increased at the start of the 16th year, it remains at those amounts, without further increase, throughout each of the four renewal terms, if Tenant opts to renew each time. Although I am surprised at the language, and doubt that many landlords would intend to hold rent steady for a 25 year period, I must construe the Lease as it is written.

///


///

Page 8 - OPINION AND ORDER

**CONCLUSION**

Plaintiff's Motion for Summary Judgment (#23) is denied.  Defendant's Motion for

Summary Judgment (#28) is granted.  Judgment will be entered.

IT IS SO ORDERED.

Dated this _____15th_____ day of April, 2008.


                                         /s/ Garr M. King_____
                                        Garr M. King
                                        United States District Judge